# STATE OF MICHIGAN

# COURT OF APPEALS

MADISON PAIGE WILLIAMS, Minor, by
KELLIE A. WILLIAMS, Next Friend,

Plaintiff-Appellee,

v

MARK R. KENNEDY, TURNER LAND JACK
LLC, and JACK VISSER,

Defendants-Appellees,

and

MICHAEL METCALF,

Defendant-Appellant.

FOR PUBLICATION
August 2, 2016
9:15 a.m.

No. 325267
Kent Circuit Court
LC No. 14-000816-NO

Before: BOONSTRA, P.J., and WILDER and METER, JJ.

METER, J.

Defendant Michael Metcalf appeals by leave granted from the trial court's order denying his motion for summary disposition. Metcalf challenges the trial court's determination that genuine issues of fact exist regarding whether he owned a boat at the time of its allegedly negligent operation. We reverse and remand for entry of judgment in favor of Metcalf.

Plaintiff Kellie A. Williams, next friend of her minor daughter Madison Paige Williams, brought this negligence action after a boat struck Madison in Silver Lake in Kent County, causing partial amputation of her right foot. Plaintiff claims entitlement to relief against Metcalf under MCL 324.80157, which holds watercraft owners liable for damages resulting from the negligent operation of their vessels. Defendant Mark R. Kennedy piloted the boat on September 1, 2013, when the accident occurred.

Kennedy had obtained the boat from Metcalf on August 26, 2013, for $45,000. Kennedy paid with two $22,500 checks, one drawn from his own account and one from the account of defendant Turner Land Jack LLC, a business owned by defendant Jack Visser. In exchange, Metcalf signed and delivered the boat's "Watercraft Certificate of Title," which contains a section entitled "Title Assignment by Seller." The certificate states that "the ownership of the

-1-

watercraft . . . has been transferred to the following purchaser(s)," listing Kennedy as transferee. Kennedy left Metcalf's residence with both the boat and the "Watercraft Certificate of Title" when the transaction was complete. Metcalf expected Kennedy to apply to the Secretary of State to transfer legal title using the paperwork he completed and delivered to Kennedy at the point of sale. Twice, on August 28 and August 30, Kennedy attempted to do so at an office of the Secretary of State. On both occasions, long lines deterred him from completing this process. Thus, when Kennedy piloted the boat in Silver Lake on September 1, 2013, striking Madison, the boat's sale had not yet been formally reported to the Secretary of State.

Kennedy successfully completed the transaction at the Secretary of State on September 5, 2013. The transfer-of-title documents list the date of purchase from Metcalf as August 26, 2013.

In addition to her complaint alleging that all defendants are liable for damages, plaintiff filed a motion for summary disposition, requesting the trial court to find that Metcalf qualified as an "owner" of the boat at the time of the accident. Metcalf subsequently filed a cross-motion for summary disposition, asking the court to determine that he did not own the boat at the pertinent time. The trial court found genuine issues of material fact regarding the question of Metcalf's ownership and denied both motions. Metcalf presently appeals the denial of his motion.

This Court reviews de novo the trial court's order denying summary disposition. *Johnson v Recca*, 492 Mich 169, 173; 821 NW2d 520 (2012). The subrule at issue here is MCR 2.116(C)(10). When reviewing a motion under this subrule, "our task is to determine whether any genuine issue of material fact exists in order to prevent entering a judgment for the moving party as a matter of law." *Morales v Auto-Owners Ins Co*, 458 Mich 288, 294; 582 NW2d 776 (1998). "We must consider the pleadings, affidavits, depositions, admissions, and any other evidence in favor of the party opposing the motion, and grant the benefit of any reasonable doubt to the opposing party." *Id*. (citation and quotation marks omitted).

This appeal also involves issues of statutory interpretation, which we review de novo. *2000 Baum Family Trust v Babel*, 488 Mich 136, 143; 793 NW2d 633 (2010).

"[T]he proper role of the judiciary is to interpret and not write the law . . . ." *Koontz v Ameritech Services, Inc*, 466 Mich 304, 312; 645 NW2d 34 (2002). Accordingly, this Court enforces a statute as written if the statutory language is unambiguous. *Wickens v Oakwood Healthcare Sys*, 465 Mich 53, 60; 631 NW2d 686 (2001). While a term "must be applied as expressly defined" within a given statute, *Barrett v Kirtland Community College*, 245 Mich App 306, 314; 628 NW2d 63 (2001), undefined words are to be given their "plain and ordinary meaning, taking into account the context in which the words are used," *Krohn v Home-Owners Ins Co*, 490 Mich 145, 156; 802 NW2d 281 (2011) (citations omitted). We may consult a dictionary in ascertaining plain meanings. *Id*. This Court must avoid an interpretation that would render any part of a statute surplusage or nugatory. *Robinson v Lansing*, 486 Mich 1, 15; 782 NW2d 171 (2010).

The Natural Resources and Environmental Protection Act (NREPA), MCL 324.101 *et seq*., sets forth procedures for selling and transferring title to watercraft. MCL 324.80304(1) states that, except in a situation not applicable here, a person may not sell watercraft "without delivering to the purchaser or transferee . . . a certificate of title with such assignment on the

certificate of title as is necessary to show title in the purchaser." MCL 324.80304(2), a complementary provision, states that a person "shall not purchase or otherwise acquire a watercraft without obtaining a certificate of title for it in the person's name . . . ." Here, it is undisputable from the evidence that Metcalf qualifies as a seller and Kennedy qualifies as a purchaser under these provisions of the NREPA. Metcalf successfully delivered the "Watercraft Certificate of Title" to Kennedy at the point of sale and expressly assigned ownership to Kennedy within this document in the section entitled "Title Assignment by Seller."

The NREPA further provides that "[a]pplication for a certificate of title . . . shall be filed with the secretary of state within 15 days after the date of purchase or transfer." MCL 324.80307(1). In a case such as this, where a "certificate of title was previously issued for the watercraft, [the application] shall be accompanied by the certificate of title duly assigned, unless otherwise provided in this part." *Id*. Thus, Kennedy was required to apply to the Secretary of State to register the transfer of title within fifteen days of purchase. Kennedy successfully completed this requirement on September 5, 2013, after the boating accident occurred, by presenting the certificate of title that had been delivered to him by Metcalf on the date of purchase.

The issue in this appeal is whether the seller of a boat qualifies as an "owner" during the period after a seller delivers the certificate of title to a purchaser but before the transfer of title has been registered with the Secretary of State. Whether Metcalf is deemed an "owner" during this period determines his liability under MCL 324.80157 for damages resulting from the boating accident.

We note, initially, that MCL 324.80307(1), after discussing the requirements for applying for a certificate of title, goes on to state that, "[i]f satisfied that the applicant is the owner of the watercraft and that the application is in the proper form, the secretary of state shall issue a certificate of title." This sentence suggests that ownership precedes completion of legal transfer of title with the Secretary of State. Indeed, legal transfer is impossible if the Secretary of State is not satisfied that "the applicant is the owner" of the watercraft. The statute implies, then, that Kennedy, not Metcalf, was the owner at the time of the accident.

More significantly, MCL 324.80103(i) sets forth an explicit definition of the term "owner": "a person who claims or is entitled to lawful possession of a vessel by virtue of that person's legal title or equitable interest in a vessel." No party suggests that Metcalf *claimed* lawful possession of the boat at the time of the accident. Nor does any party argue that Metcalf was *entitled* to lawful possession by virtue of an equitable interest. Indeed, in exchange for Kennedy's full $45,000 payment, Metcalf assigned the boat to Kennedy within the boat's certificate of title by signing his name to a declaration that ownership had been transferred. Delivery to Kennedy was completed when Kennedy accepted both the certificate and the boat into his possession. Metcalf testified that he expected Kennedy to fulfill the remaining, statutory requirements for title transfer by applying to the Secretary of State in accordance with MCL 324.80307(1).

In light of these facts, it is only possible that Metcalf qualified as an "owner" under MCL 324.80103(i) if he was entitled to lawful possession by virtue of his legal title at the time of the accident. Legal title, as defined by *Black's Law Dictionary* (10th ed), exists when title

"evidences apparent ownership but does not necessarily signify full and complete title or a beneficial interest." Metcalf's name did appear on the certificate of title registered with the Secretary of State at the time of the accident because Kennedy had not yet successfully transferred title with that office. Accordingly, Metcalf arguably had legal title to the boat at the time of the accident. We cannot find, however, that Metcalf was entitled to lawful possession of the boat "by virtue of" any legal title. MCL 324.80103(i).

"[B]y virtue of" means "through the force of" or "by authority of." *Merriam-Webster's Collegiate Dictionary* (11th ed). Even if Metcalf had legal title to the boat at the time of the accident, it is clear that Metcalf was not entitled to lawful possession through the force of or by authority of this title. *Black's Law Dictionary* (10th ed) defines "possession" as "having or holding property in one's power" or "the right under which one may exercise control over something to the exclusion of all others," and it defines "lawful possession" as possession that is "based on a good faith belief in and claim of ownership" or "granted by the property owner to the possessor." Metcalf expressly transferred his possessory interest in the boat to Kennedy at the point of sale. He had no possession granted by Kennedy or possession based on a good faith claim of ownership.

Additionally, Kennedy was to apply to the Secretary of State to transfer official title within fifteen days after the sale, in accordance with MCL 324.80307(1) and MCL 324.80125(5). Any suggestion that Metcalf's right to lawful possession continued into this fifteen-day post-purchase period conflicts with these provisions. Indeed, the Secretary of State would be unable to determine that the applicant for title registration, the purchaser, is the owner of a vessel if the seller retains the right to possession after a proper transfer of possession and title at the point of sale.

For the forgoing reasons, Metcalf did not qualify as an "owner" of the boat for purposes of the present lawsuit.[1]

---

[1] Plaintiff cites *Hunt v Adams*, unpublished opinion per curiam of the Court of Appeals, issued June 14, 2012 (Docket No. 304563), in support of her appeal. We decline to rely on this case because it is nonbinding, see MCR 7.215(C)(1), and also because it is sufficiently distinguishable. Indeed, in *Hunt*, the Secretary of State refused to issue a certificate of title to a purported purchaser, Janis Jones, because of an outstanding lien on the boat. *Hunt*, unpub op at 2-3. The *Hunt* Court's holding that Jones "never legally took title to the boat," *id*. at 4, does not apply here, where the Secretary of State found that Kennedy was indeed the owner and issued a formal certificate of title on September 5, 2013, and where the transfer-of-title documents filed with the Secretary of State specify a purchase date of August 26, 2013. We note that, even if we were to conclude that Kennedy did not acquire legal title to the boat until he obtained a certificate of title from the Secretary of State, this does not mean that Metcalf was an "owner" under MCL 324.80103(i) after the sale. The question at issue here—whether, at the time of the accident, Metcalf was an owner of the boat under the definition set forth in MCL 324.80103(i)— does not involve an inquiry into whether the assignee acquired legal title to the boat. Kennedy was, in fact, an "owner" under MCL 324.80103(i) at the time of the accident, in that he had

Reversed and remanded for entry of judgment in favor of Metcalf. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Kurtis T. Wilder
/s/ Patrick M. Meter

---

lawful possession by virtue of his equitable title. See Black's Law Dictionary (10th ed) (defining "[e]quitable title" as "[a] title that indicates a beneficial interest in property and that gives the holder the right to acquire formal legal title"). Finally, we note that the additional opinion cited by plaintiff—*Jerry v Second Nat'l Bank of Saginaw*, 208 Mich App 87; 527 NW2d 788 (1994)— is distinguishable because in the present case, as contrasted with *Jerry*, an assignment of title from Metcalf to Kennedy occurred. Cf. *id*. at 92-93.